Argued March 29, reversed and remanded April 30,
reconsideration denied June 5, petition for review denied June 26, 1979

JONES, et vir, *Appellants,*
*v.*
HERR, et al, *Respondents.*
(Trial Court No. 103,173, CA No. 12192)
594 P2d 410

J. P. Graff, Eugene, argued the cause for appellants. With him on the brief was Larry O. Gildea, P. C., Portland.

Jay D. Enloe, Portland, argued the cause and filed the brief for respondents. With him on the brief was Vergeer, Roehr & Sweek, Portland.

Before Schwab, Chief Judge, and Thornton, Gillette, and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Plaintiffs appeal from a summary judgment dismissing their complaint against defendants Herr and Stiles. We reverse and remand.

Defendants Herr and Stiles own and operate, as partners, a mini-warehouse business. At the time of the events leading to the present suit, defendant John Hoffert and his wife were living rent-free in a house on the property, as compensation for Mrs. Hoffert's services as manager of the business. Defendant Hoffert was employed full-time elsewhere, but on occasion performed services for Herr and Stiles. Plaintiff Ilse Jones was the resident manager of an apartment complex across the road from the mini-warehouse business. On December 28, 1976, Ilse Jones saw the Hofferts' son on the apartment premises under circumstances suggesting he and a friend were about to commit acts of vandalism. She had previously spoken to Mrs. Hoffert, Stiles, and the police concerning other incidents of vandalism of the apartment building by the Hofferts' son. She proceeded in her car across the street to the mini-warehouse to confront the Hofferts about the problem. Shortly after she entered the business office, which is connected to the residence, Mr. and Mrs. Hoffert appeared. Soon thereafter, their son entered. When defendant Hoffert realized the purpose of Mrs. Jones' visit, he ordered his wife and son out of the office, and then ordered Mrs. Jones to leave the premises.

During this brief confrontation, Mrs. Jones was upset and spoke in something other than a normal voice. Hoffert followed Mrs. Jones outside, and as she was entering her car, closed the car door. The door struck her under the left ear and drove the right side of her head into the door frame. She sued John Hoffert for her personal injuries. She also sued Herr and Stiles on the theory that Hoffert was their agent and was acting within the scope of his authority at the time of the incident. Mrs. Jones' husband also sued all three

[939]

defendants for loss of consortium. The first count of their amended complaint alleged that Hoffert's conduct in closing the door on Mrs. Jones' head was malicious. The second count alleged negligence. Defendants Herr and Stiles moved for summary judgment arguing that there was no genuine issue of material fact and that as a matter of law (1) defendant Hoffert was not their agent, and (2) he was not acting within the scope of any authority in closing the car door on Ilse Jones' head. In an opinion letter the trial court granted the motion, ruling for Herr and Stiles on both grounds.[1] Plaintiffs assign error to the court's rulings.[2]

In *Forest Grove Brick v. Strickland*, 277 Or 81, 87, 559 P2d 502 (1977), the court stated the standard for review of a grant of summary judgment:

> "To warrant summary judgment the moving party must show that there is no genuine issue of material fact. It is not the function of this court on review to decide issues of fact but solely to determine if there is an issue of fact to be tried. We review the record on summary judgment in the light most favorable to the party opposing the motion."

The first question is whether there is a genuine issue of material fact as to whether John Hoffert was an agent of Herr and Stiles on December 28, 1976. Agency is "the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1 (1958). A servant is an agent employed by another to perform services whose conduct in performing such services is subject to the other's right to control. Restatement (Second) of Agency §§ 2(2), 220(1) (1958). There need

---

[1] The trial court expressly determined that there was no just reason for delay and entered final judgment for Herr and Stiles pursuant to ORS 18.125.

[2] At oral arguments, plaintiffs withdrew their third assignment of error, which concerned an item in the cost bill.

be no formal contract for such a relationship to exist, Restatement (Second) of Agency) 220 comment b (1958), and one can be an agent of another even though the service is performed gratuitously. *Butenshon v. Shoesmith*, 191 Or 76, 228 P2d 426 (1951); Restatement (Second) of Agency § 225 (1958). The person for whom the service is performed must consent or manifest consent to the existence of the relationship. Restatement (Second) of Agency §§ 221, 225 comment c (1958). In the present case there is no evidence of an express agreement between defendant Hoffert and defendants Herr and Stiles. Hoffert was not on the payroll of the mini-warehouse business, and Herr and Stiles denied he was their employee at the time of the incident. Hoffert stated in a deposition, however, that he performed various services for the business, including answering customer inquiries, showing storage facilties, and filling out rental agreements. He explained that he was merely helping his wife perform her duties. The record also reveals that Stiles had seen Hoffert helping customers of the business and voiced no objection.[3] In a criminal case arising out of the incident giving rise to the present case, Hoffert testified that he and his wife both manage the mini-warehouse business. In that same case, Stiles testified that Hoffert "handles probably between $50,000.00 and $60,000.00 a year for us. He has to be honest and truthful or we couldn't have him."[4] From the above evidence, a jury could reasonably conclude that Hoffert performed services as a manager for Herr and Stiles subject to their right of control, and that Herr and Stiles consented thereto. Thus, there is a genuine issue of material fact as to whether Hoffert was the agent of Herr and Stiles on

---

[3] Illustration 3 to Restatement (Second) Agency § 225 (1958) states:

"A, a servant of P without power to employ assistants, secures the gratuitous services of B. P sees B assisting A and says nothing. P may be found to have consented to B's services as his servant."

[4] Excerpts from the testimony in the criminal case have been made a part of the record in the present case.

December 28, 1976. Therefore, the trial court improperly granted summary judgment for Herr and Stiles as to the agency question.

The second question is whether there exists a genuine issue of material fact as to whether, in closing the car door on Mrs. Jones' head, defendant Hoffert was acting within the scope of his authority. In *Stanfield v. Laccoarce*, 284 Or 651, 654-55, 558 P2d 1271 (1978), the court outlined the factors to consider in determining the scope of an agent's authority:

> "Under the doctrine of respondeat superior, an employer is liable for the torts of his employee when the employee was acting within the scope of his employment. *United Pac. Ins. v. Truck Ins. Exch.*, 273 Or 283, 541 P2d 448 (1975). In deciding whether an employee was acting within the scope of his employment, the factors to be considered are whether the act in question is of a kind the employee was hired to perform, whether the act occurred substantially within the authorized limits of time and space, and whether the employee was motivated, at least in part, by a purpose to serve the employer. *Gossett v. Simonson*, 243 Or 16, 24, 411 P2d 277 (1966), *quoting* Restatement (Second) of Agency § 228 (1958). The scope of employment limitation is designed to ensure that employers will be held liable only for harm resulting from activity from which they were receiving the benefit. '[T]he ultimate question is whether or not it is just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed.' Restatement (Second) of Agency § 229, Comment a (1958). Consequently, we have held that the question of whether or not an employee has acted within the scope of his employment at any given time is normally a question for the jury, except in cases where only one reasonable conclusion can be drawn from the facts. *Gossett v. Simonson, supra; Kowaleski v. Kowaleski*, 235 Or 454, 385 P2d 611 (1963)."

Using these factors, we will analyze separately the count in negligence and the count alleging an intentional tort.

[942]

NEGLIGENCE

When interpreted liberally in favor of the plaintiffs, the record reasonably supports a conclusion that John Hoffert was authorized to help "manage" the mini-warehouse business. Although the authority inherent in such a position is imprecisely defined, *see* Restatement (Second) of Agency § 73 (1958), it includes the authority to maintain order on the business premises.[5] Such authority may encompass the power to order from the premises persons whose conduct is in the manager's opinion disruptive. Hoffert testified that for part of the time that Mrs. Jones was in the business office, she was "yelling" loudly. He testified in a deposition that he wanted her off the property because "that office is a place of business....If customers would have walked in, they would have walked right back out." Thus, there is evidence that reasonably supports the conclusion that Hoffert considered Mrs. Jones' conduct disruptive to the business, as a result of which he decided to escort her from the premises. We cannot say as a matter of law that the further act of shutting Mrs. Jones' car door was so extraordinary as not to be incidental to the act of escorting Mrs. Jones from the premises. Thus, there is a jury question as to whether Hoffert's acts were of a kind which he was authorized to perform, or incidental thereto.

The acts occurred during the normal business hours of the mini-warehouse and on the business premises.

Finally, there is evidence from which a jury could reasonably conclude that in ordering Mrs. Jones from the premises, John Hoffert was at least partly motivated by a purpose to serve the business. As noted above, Hoffert testified as to his concern about the effects of Mrs. Jones' presence on the business premises. Although he also testified that he ordered Mrs.

---

[5] *See* Restatement (Second) of Agency § 73(f) (1958), stating that the authority to manage a business includes the authority "to direct the ordinary operations of the business."

Jones from the premises to protect his wife from emotional upset, we cannot say as a matter of law that Hoffert was "too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228(2) (1958). Therefore, since this is not a case "where only one reasonable conclusion can be drawn from the facts,"*Stanfield v. Laccoarce, supra,* 284 Or at 655, the trial court improperly granted summary judgment as to Hoffert's scope of authority on the count of negligence.

## INTENTIONAL TORT

In addition to the facts set out in *Stanfield v. Laccoarce, supra,* an important factor in deciding a principal's liability for his agent's intentional torts is whether "the use of force is not unexpectable by the master." Restatement (Second) of Agency § 228(1)(d) (1958). In *Barry v. Oregon Trunk Railway,* 197 Or 246, 257, 253 P2d 260 (1953), the court stated the following general rules:

"Where the nature of the employment or the duty imposed on a servant is such that the master must contemplate the use of force by the servant in performance as a natural or legitimate sequence, the master will be held liable for the willful or malicious act of his servant even though he had no knowledge that the act was to be done, and although the act was in disobedience of express orders or instructions given by him.. On the other hand, the master is not liable for the willful and malicious acts of the servant committed outside the scope of his employment, and this is true even though the acts in question are committed in the course of the employment or the employment furnishes the opportunity for the wrongdoing. . . . (Citation omitted.)

"If the wrongful act of the servant is committed to effect some independent purpose of his own, the servant alone is ordinarily liable therefor."

*Paur v. Rose City Dodge,* 249 Or 385, 438 P2d 994 (1968), involved a corporate principal's liability for an alleged battery by its agents, a sales manager and a

[944]

general manager. The court held that it was a jury question whether a general manager and a sales manager of a car dealership had authority to direct the removal by force of unauthorized persons from the premises. Here, as stated above, the record reasonably supports the conclusion that Hoffert was authorized to help "manage" the mini-warehouse business. The precise scope of that authority, and whether it encompasses the forcible removal of unauthorized persons from the premises, is a question for the jury.

Herr and Stiles strenuously argue that Hoffert's act was too little actuated by a purpose to serve the business. In his deposition, Hoffert testified about the incident as follows:

"Q   Now, was Mrs. Jones in the automobile, had she entered the automobile when you came down and stood at the landing?

"A   She was getting in when I came down.

"Q   And then what happened?

"A   Well, I came down and she was still saying something to me. And I just kept telling her, 'Get off the property. This is a place of business. Just leave.'

"And she got in the car. She had already had her legs and everything in and I took the door and just pushed it shut. And just pushed the door shut.

"And she raised—you see, I would be standing a little higher, and she would—she looked at me and said, 'You're a real bastard.' And the door hit her head.

"Q   So your testimony is that you started to close the door, and both of her legs were inside the car?

"A   Absolutely."

Mrs. Jones' most detailed deposition testimony concerning the incident, from the time she was ordered from the business premises, is as follows:

"At this moment Mr. Hoffert came towards me, opened the door. He was facing me and I was standing this way as I am sitting now.

"He was facing me, pushed me just slightly out of the door. It wasn't quite a heavy push. If I would have

[945]

gotten the heavy push, I would of went over backwards. There were steps. He just slightly pushed me out.

"I realized that there was nothing behind me but the ground, so I turned around and walked as far as I could to my car. When I arrived at my car, which wasn't far away from the steps, maybe six to eight feet at most I would think, I opened my car door.

"I was in position to go in, and as I had one foot already down and leaning toward with the other foot still outside. Then he took my car door from the outside and pulled it back and slammed it. And then in this position I had this part hit the door [indicating], because I was leaning forward. Because I was still outside halfway.

"He yelled out all the way from the office to the car, he yelled some words at me like, 'Why don't you go home.'

" 'What the hell are you doing over here'?

"I want to get everything, but something similar. I can't remember all the details.

"I picked up my glasses and I did holler back at him, I said, 'All right. You've got to pay for these.' "

From the above quoted testimony, a jury could reasonably infer that Hoffert closed the door on Mrs. Jones' head in retaliation for her personal derogatory remarks directed at Hoffert. If this were the only available inference, we could say that Hoffert was not motivated by furtherance of the mini-warehouse business, and Herr and Stiles would not be liable. *See Barry v. Oregon Trunk Railway, supra.* Mrs. Jones' testimony does not, however, require the conclusion that Hoffert's motive to protect the business had been supplanted by purely personal motives. Thus, the record is not so complete and unequivocal as to support only one reasonable conclusion. We hold that, as to the alleged intentional tort, the trial court erred in granting summary judgment for Herr and Stiles on the issue of Hoffert's scope of authority.

Reversed and remanded.