Argued and submitted February 23, affirmed August 10, 1981

GAHA et al,
*Respondents,*

*v.*

TAYLOR-JOHNSON DODGE, INC.,
*Defendant,*
*and*
CHAMPION HOME BUILDERS CO.,
*Appellant.*

(53861; CA 18110)

632 P2d 483

Dean M. Quick, Albany, argued the cause for appellant. With him on the briefs was Weatherford, Thompson, Brickey & Powers, P.C., Albany.

Gary E. Norman, Albany, argued the cause for respondents. With him on the brief was Scott & Norman, Albany.

Before Buttler, Presiding Judge, and Warden, J., and Joseph, C. J.*

BUTTLER, P. J.

---

* Joseph, C. J., *vice* Warren, J.

## BUTTLER, P. J.

Plaintiffs brought this action against both defendants for damages based upon revocation of acceptance of a defective motor home, ORS 72.6080,[1] seeking return of the purchase price, less the reasonable rental value, plus consequential damages.[2] Following trial, the jury returned a special verdict finding that defendant Taylor-Johnson Dodge, Inc., the dealer, was the agent of defendant Champion Home Builders Co. (Champion), the manufacturer, and that plaintiffs were entitled to revoke their acceptance against both defendants. Damages were awarded plaintiffs in the amount of $27,641.95, representing the purchase price of the motor home, less the reasonable rental value, and $1,066 as consequential damages. Only defendant Champion appeals. We affirm.

Plaintiffs having obtained a verdict, we summarize the evidence in the light most favorable to them.

In mid-June of 1978, plaintiff Roye Gaha[3] began negotiations with the dealer for the purchase of a motor home manufactured by Champion. Plaintiff had recently

---

[1] ORS 72.6080 provides:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

"(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or shoud [sic] have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

[2] Although the complaint alleged that the actions of the defendants were subject to the provisions of 15 USC, § 2301, et seq. (the Magnuson Moss Warranty Act of 1975), the case was tried and submitted solely on the revocation of acceptance theory. We consider no other theory for that reason.

[3] There are two plaintiffs, who are husband and wife. Because Roye Gaha was the major participant in this transaction, we refer to him as the plaintiff.

arrived in the United States from Australia to arrange a cross-country trip he planned to make with his family beginning August 1, 1978. He devoted most of one day outlining his specific needs, including optional equipment and fittings, to the dealer. During the course of negotiations the dealer phoned Champion's factory to confirm answers to plaintiff's questions. On at least one occasion plaintiff spoke directly by phone with Champion's factory representative to confirm that certain of the items he wanted could be installed.

Two matters were of particular importance to plaintiff: (1) that the motor home be ready for him on August 1, the date on which he planned to return from Australia with his family, and (2) he wanted to substitute an additional couch-bed for the table and chairs included with the standard model of the motor home. In discussing his desire for that substitution, plaintiff expressed his concern as to whether the motor home model he was shown would accommodate a couch long enough for his children without repositioning a door on the unit. He spoke directly with Champion's factory representative to inquire if the door could be repositioned; he was told that the unit he would be sold would incorporate a new design which afforded sufficient room for the longer couch.

Plaintiff left the dealer and returned to Australia with the understanding that all of his requested options or acceptable substitutions would be installed at Champion's factory, with some enumerated minor exceptions, and that the unit would be ready on August 1. Champion, however, shipped the dealer a standard unit, without a repositioned door and without some of the other options which were to have been factory-installed, along with an uninstalled short couch. The dealer either installed the options itself or contracted with others to do the work. There was testimony from a representative of Champion and from a former employee of the dealer that, although a few of the options requested by plaintiff were not offered by Champion, many of them could have been installed by the factory. Other testimony indicated that Champion's peak season occurred during the summer months, during which period deliveries were slower than normal, and that dealers could "arrange" with Champion to do factory installations. Although there

was no direct testimony that Champion was in its peak season when plaintiff ordered the motor home, or that Champion made express arrangements with the dealer to do the factory installations, reasonable inferences from other evidence would permit those factual conclusions.

When plaintiff returned to the dealer on August 1, the unit was not ready as promised; it took the dealer several days of work to prepare the unit for delivery. Plaintiff paid the balance of the purchase price and, with his oldest son, started to drive the motor home to San Francisco to pick up the rest of his family and commence their trip east. During that trip, numerous defects and problems developed. After trying unsuccessfully to obtain service in San Francisco, plaintiff called the dealer, who suggested that plaintiff drive the unit back to Albany to remedy the problems.

During plaintiff's five-day stay in Albany he was, for the first time, given a copy of defendant's limited warranty, which excluded recovery for consequential damages. The only warranty information contained in the sales brochure, which was provided plaintiff earlier, limited the warranty to one year, but did not exclude such damages; it did state, however: "Ask your dealer to see a complete warranty form." There is no evidence that he was shown the complete warranty at or prior to the time of the transaction.

Plaintiff left Albany and began his planned trip east; however, because of constantly recurring problems with the motor home, much of his time was spent visiting service centers seeking repairs.[4] After settling in Lebanon, Indiana, plaintiffs commenced this action to revoke their acceptance.

Champion first contends that the trial court erred in denying its motion for directed verdict on the ground that there was no privity of contract between plaintiffs and Champion, and therefore Champion was not a "seller"

---

[4] We need not detail the extraordinary number and kinds of problems plaintiff encountered with the motor home, or his determined efforts to remedy them in many parts of the country. Those details comprise a doleful, frustrating saga.

within the meaning of ORS 72.1030(1)(e)[5] against whom the buyers could revoke acceptance. In support of its contention defendant cites *Clark v. Ford Motor Co.,* 46 Or App 521, 612 P2d 316 (1980), where we held that, as a matter of law, the plaintiff buyer could not recover against the defendant manufacturer on a revocation of acceptance theory, because plaintiff did not buy the item directly from defendant *and there was no evidence that the dealer was acting as defendant's agent in making the sale.* Although the contract of sale here was between plaintiffs and the dealer, this case differs from *Clark* in that there is some evidence, discussed under Champion's second contention, from which a jury could find that the dealer was acting as Champion's agent with respect to this transaction.

■        Champion's related assignment of error — that the trial court erred in denying its motion to withdraw the issue of agency from the jury's consideration — raises the agency issue squarely. Agency is the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. *Jones v. Herr,* 39 Or App 937, 594 P2d 410, *rev den* (1979). Champion contends that there is no evidence that the dealer had been employed by it for its benefit or under its control. The evidence was sparse, but it was sufficient to submit the agency question to the jury. From the testimony of Champion's representative and that of the dealer's former employee, the jury could reasonably infer that Champion was in the midst of its peak season and, when faced with an August 1 deadline for delivery of the unit, arranged for the dealer to act on its behalf in installing the optional equipment which would otherwise have been installed by the manufacturer. There was also evidence that plaintiff, prior to his ordering the motor home, contacted Champion directly and was given certain assurances that the motor home to be sold to him would be built to his specifications, including some of the options he enumerated to the representative, and that the unit would be delivered by August 1. It may be reasonably inferred that Champion

---

[5] ORS 72.1030(1)(e) provides:

" 'Seller' means a person who sells or contracts to sell goods."

wanted to consummate the sale to plaintiff through the dealer and that, in order to do so, it delivered the incomplete unit to the dealer with the expectation that the dealer would do whatever was necessary to make the unit ready for delivery to plaintiff.

■■ In order to establish an agency relationship, there need not be a formal contract, but the person for whom the service is performed must consent to the existence of the relationship and must have the right of control. *Jones v. Herr, supra,* 39 Or App at 940-41. The evidence here, taken as a whole, permits inferences that those factors existed and presented a jury question as to the dealer's agency relationship with Champion in connection with this sale.[6] It follows that there was no error in denying Champion's motion.

■ Finally, Champion contends that its motion to withdraw from jury consideration the issue of consequential damages was improperly denied. It is argued that such damages are not available between a buyer and a remote manufacturer and, further, that they were precluded by Champion's limited warranty. In response to the first contention, we have already concluded that in this case there is sufficient evidence to permit a jury to find that Champion made the sale here through its agent.

In response to the second contention, it is true that under its limited warranty covering the motor home, Champion excluded recovery for consequential damages against it or its dealer. It is also true that ORS 72.7190(3) permits a seller to exclude recovery of consequential damages; however, no such limitation in the warranty was made or expressed at the time of the transaction involved in this case. The limited warranty was neither presented to, nor acknowledged by, plaintiff until about two weeks after the delivery of the unit. To the extent that plaintiff agreed to a modification of the warranty at that time, there was no consideration to support that modification. *Liberty Mutual Fire Ins. v. Hubbard,* 275 Or 567, 570, 551 P2d 1288 (1976).

Affirmed.

---

[6] No objection is made with respect to the jury instruction on agency, other than that no instruction should have been given.