Argued and submitted January 15, reversed on appeal; affirmed on cross-appeal
July 7, reconsideration denied September 29, petition for review denied
November 23, 1993 (318 Or 97)

# MID-RIVER TRANSPORTATION
## SERVICES, INC.,
an Oregon corporation,
*Appellant - Cross-Respondent,*

*v.*

## Jake VanPELT
and Marilyn VanPelt, individually
and dba VanPelts' Enterprises
and VanPelts' Christmas Trees,
*Respondents - Cross-Appellants.*

(90-CV-0258; CA A72388)

854 P2d 506

W. Theodore Guthrie, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were David Gernant, Steven L. Myers, Myers & Knapp, Portland, Benjamin E. Freudenberg and Nelson, Freudenberg & James, Grants Pass.

Richard D. Adams, Grants Pass, argued the cause for respondents - cross-appellants. With him on the brief were Holly A. Preslar and Myrick, Seagraves, Adams & Davis, Grants Pass.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

RIGGS, J.

**RIGGS, J.**

Plaintiff, an interstate carrier, appeals a judgment for defendants, shippers. Defendants cross-appeal the denial of their request for attorney fees. We reverse on the appeal and affirm on the cross-appeal.

The parties contracted for plaintiff to ship defendants' Christmas trees to customers in several states. Defendants expected to, and did, pay freight charges for several of their customers. However, defendants told plaintiff that they did not want to assume liability for freight charges for shipments to three customers, including a man named Nichols. Defendants told plaintiff that the shipment to Nichols would be "freight collect," *i.e.* "C.O.D." Defendants signed a guaranty agreement in which they promised to pay attorney fees if a collection action was brought against them.

When plaintiff picked up the shipments destined for Nichols, defendants' employee signed a uniform bill of lading prescribed by the Interstate Commerce Commission (ICC) naming defendants as the shipper. The employee did not initial or sign the non-recourse provision, which would have indicated their refusal to pay freight charges. After Nichols did not pay the freight charges, plaintiff sought payment from defendants. Defendants did not pay, and plaintiff sued for breach of contract.

The breach of contract claim was tried to the court. The trial court's findings of fact and conclusions of law, made pursuant to ORCP 62, are set out in the footnote.[1] Plaintiff

---

[1] The trial court found:

"1. Plaintiffs [*sic*] and defendants entered into contract for hauling Christmas Trees through the terms of a client resume dated October 5, 1989 and a guarantee agreement also dated October 5, 1989.

"2. The parties fully performed all terms of this contract.

"3. The parties did not intend that Defendants would be liable for any of the loads hauled for ROY NICHOLS.

"4. Defendants were at all material times herein acting as the agent of ROY NICHOLS and this agency status was known and understood by Plaintiff.

"5. The parties did not intend that the bills of lading issued on the loads hauled to ROY NICHOLS would create any contractual obligation on the part of Defendants to Plaintiffs.

"6. Plaintiff and Defendants had a specific agreement prior to the hauling of the loads referenced in the Complaint that those loads would be the responsibility of

assigns error to the judgment, the findings, the court's refusal to grant its motion to dismiss defendants' affirmative defenses of waiver and estoppel and its refusal to award attorney fees under the guaranty agreement.

We consider together all of the assignments of error relating to defendants' liability under the contract. Since 1919, the uniform bill of lading has been the basic transportation contract between shippers and carriers. *Southern Pacific Transportation Co. v. Commercial Metals Co.*, 456 US 336, 342, 102 S Ct 1815, 72 L Ed 2d 114 (1982). A shipper can release itself from liability for freight charges by signing the non-recourse clause in the bill of lading. If it does not, it is primarily liable. 456 US at 343. In *Southern Pacific*, the United States Supreme Court reiterated that the historic purpose of the Interstate Commerce Act was to achieve uniformity in freight charges in order to eliminate discrimination and favoritism. In light of that purpose, a carrier has not only a right but a duty to recover charges for duties performed.

Defendants argue that, before the time that the bill of lading was signed, the parties orally agreed that plaintiff would look only to Nichols for payment. Be that as it may, the bill of lading was the contract in this case. Because it is clear on its face, the trial court's consideration of extrinsic evidence of the parties' intent was improper. When defendants failed to pay the freight charges as required by the uniform bill of lading, they breached the contract.

---

ROY NICHOLS and and the Defendants would have no responsibility therefore.

"7. Neither party relied on the terms of any of the bills of lading referenced in this case before or during the time that the referenced loads were hauled.

"8. At no time did the Defendants promise to pay the Plaintiff for any of the freight charges for the loads hauled to Roy Nichols.

"9. ROY NICHOLS had an agreement with Plaintiff through which ROY NICHOLS solely would be liable for the freight charges incurred on these loads.

"*CONCLUSIONS OF LAW*

"1. The bills of lading referenced in the complaint do not create any liability on the part of Defendants to Plaintiff.

"2. There has been no breach of contract by Defendants.

"3. Defendants are not liable to Plaintiffs [*sic*] for the freight charges alleged in the complaint."

 Defendants argue that, even if the bill of lading was the contract, they are not liable because they were acting as agents for Nichols, and that that status was known to plaintiff. The trial court so found. However, establishment of an agency relationship requires the consent of the principal. *Gaha v. Taylor-Johnson Dodge, Inc.*, 53 Or App 471, 477, 632 P2d 483 (1981). To show an agency relationship between Nichols and defendants, defendants rely on plaintiff's employee's testimony that she supposed that defendants "could be" Nichols' agents. That opinion is irrelevant. Defendants failed to produce evidence that *Nichols*, the alleged principal, consented to the agency relationship. The trial court's finding that defendants were acting as agents for Nichols is not supported by the evidence. Agency was not established.

■ Defendants next argue that plaintiff's enforcement of the bill of lading is barred by estoppel. For the proposition that estoppel is a defense in a bill of lading case, they rely on *Consolidated Freightways Corp. of Delaware v. Admiral Corp.*, 442 F2d 56 (7th Cir 1971), which was discussed with apparent approval in *Southern Pacific*. In *Admiral Corp.*, a consignee pre-paid freight charges to the shipper, and received goods under a bill of lading marked "pre-paid." When the shipper failed to pay the carrier, the carrier demanded payment from the consignee. In *Southern Pacific*, the United States Supreme Court noted that estoppel was a viable defense for the consignee because the consignee had no means to protect itself from freight charge liability. The court went on to note that the most significant distinction between the positions of the consignee in *Admiral Corp.* and the *Southern Pacific* shipper was that the latter could have protected itself completely by signing the non-recourse provision of the bill of lading. 456 US at 347. Likewise, defendants in this case could have protected themselves by executing the non-recourse provision. Estoppel is not available on these facts.

■ Defendants also argue that plaintiff waived its right to collect freight charges by agreeing to hold defendants harmless if Nichols did not pay. This agreement was made before the bill of lading was signed. Waiver is the intentional relinquishment of a known right. *Great American Insurance*

*v. General Insurance*, 257 Or 62, 72, 475 P2d 415 (1970). Essentially, defendants argue that plaintiff waived its right to rely on a contract term before the contract, and hence the right, came into existence. What defendants characterize as a "waiver" is really parol evidence, and it cannot be used to vary the meaning of an unambiguous term making defendant liable for Nichols' freight charges. ORS 41.740.

Finally, plaintiff assigns error to the court's refusal to enforce the guaranty agreement. That agreement provided that defendants would be liable for plaintiff's attorney fees if plaintiff had to bring an action to collect money owed on defendants' account. Defendants argue that any liability they incurred could arise only under the uniform bill of lading. They cite no authority, and we find none, that suggests that a guaranty cannot be executed separately from a bill of lading. Because it is mooted by our disposition of this case, we do not need to address plaintiff's assignment concerning the admission of parol evidence to interpret the guaranty.

On cross-appeal, defendants assign error to the court's refusal to award them attorney fees under ORS 20.096(1). They argue that ORS 20.096(1) makes liability for attorney fees reciprocal. Because defendants are no longer the prevailing party, the issue of attorney fees under ORS 20.096(1) is moot.

Reversed on appeal; affirmed on cross-appeal.