Argued and submitted November 3, 1998, decision of Court of Appeals and judgment of circuit court reversed; case remanded to circuit court for further proceedings November 4, reconsideration denied December 14, 1999

Ken TAYLOR,
*Petitioner on Review,*

*v.*

WERNER ENTERPRISES, INC.,
*Respondent on Review.*

(CC DCV95-6616; CA A94791; SC S44921)

988 P2d 384

Jacqueline L. Koch, of Findling & Johnson LLP, Portland, argued the cause for petitioner on review. With her on the brief was James Dana Pinney, Tualatin.

R. Daniel Lindahl, of Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, argued the cause for respondent on review. With him on the brief was John T. Kaempf, Portland.

Richard David Wasserman, Assistant Attorney General, Salem, filed a brief for *amicus curiae* Bureau of Labor and Industries. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

RIGGS, J.

**RIGGS, J.**

In this wage case, plaintiff contends that defendant Werner Enterprises, Inc. (Werner) violated ORS 652.150 by failing to pay plaintiff's wages upon termination of his employment and violated ORS 652.610 by withholding $400 from his wages as a bond. The trial court concluded that Werner was plaintiff's employer and had not violated those statutes. The Court of Appeals affirmed without opinion. *Taylor v. Werner Enterprises, Inc.*, 151 Or App 200, 948 P2d 1260 (1997). We conclude that Werner was plaintiff's employer and is liable for the acts of which plaintiff complains. We reverse the decision of the Court of Appeals and the judgment of the circuit court, and remand the case to the circuit court for further proceedings.

We take the facts from the trial court's findings and from the record. Plaintiff, a long-haul truck driver, signed an employment contract with Driver Management, Inc. (DMI) in 1994. DMI is a wholly owned subsidiary of Werner. DMI hires drivers and leases their services to Werner. The lease, however, was not produced at trial. Werner gives those drivers their assignments and supervises their driving. Werner pays DMI a "per mile" rate for the drivers' services. DMI also pays the drivers a "per mile" rate.

Both DMI and Werner are incorporated in the state of Nebraska. Plaintiff lives in Oregon. In 1994, plaintiff contacted Werner by telephone regarding employment. Werner directed him to its terminal in Denver, Colorado. Plaintiff traveled to Werner's terminal in Denver and completed and signed his employment application. The application disclosed that DMI was plaintiff's prospective employer. Plaintiff was hired and, over the course of his employment, maintained his residence in Oregon and drove throughout the 48 contiguous states and Canada. DMI paid plaintiff for his services by depositing funds directly into plaintiff's Oregon bank account.

When plaintiff signed his contract with DMI, he also signed two agreements authorizing DMI to withhold money from his paychecks. The first agreement authorized DMI to withhold $10 per week from his wages as a "bond," until a

total of $400 had been withheld. That agreement specified that the bond would be refunded approximately 60 days after plaintiff's employment ended, as long as there were no claims against the bond and plaintiff returned his Werner identification card. The second agreement provided, in part: "In addition, I authorize Driver Management, Inc., to withhold from my final paycheck and/or bond any and all money due the Company at the time of my termination."

In February 1995, plaintiff gave one month's notice to Werner that he was quitting his job. At that time, DMI already had withheld $400 from plaintiff's wages under the bond agreement. On March 9, 1995, Werner sent one of its employees to plaintiff's home in Portland to pick up plaintiff's truck. On March 15, 1995, DMI issued plaintiff's final wage statement in the amount of $0. The statement reflected a deduction of $500.80 from plaintiff's wages, which DMI had withheld until it could determine whether plaintiff owed it any money. On March 24, 1995, after the truck had been inspected, DMI paid plaintiff the $500.80 that it had withheld. On May 12, 1995, DMI refunded to plaintiff the $400 that it had been holding under the bond agreement.

On June 29, 1995, plaintiff brought this action against Werner. The complaint named only Werner, not DMI, as defendant. Plaintiff made two claims. First, he claimed that Werner had violated ORS 652.150 by withholding wages from his final paycheck. That statute provides for a penalty of up to 30 days' wages "[i]f an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 * * *." According to plaintiff, ORS 652.150 required Werner to pay him all his wages due on the day that his employment ended. Plaintiff sought statutory penalties of $3,736.20 and attorney fees for Werner's alleged noncompliance with that requirement.

Second, plaintiff claimed that, by withholding the $400 bond, Werner violated ORS 652.610(3), which limits the circumstances under which employers may withhold employees' wages. ORS 652.610(3) provides, in part: "No employer may withhold, deduct or divert any portion of an employee's

wages * * *." In that claim, plaintiff sought the $200 statutory penalty mandated by ORS 652.615 and attorney fees.

The trial court transferred the case to mandatory arbitration under ORS 36.405. The arbitrator granted summary judgment to Werner. Plaintiff requested a trial *de novo*. ORS 36.425(2)(a).[1]

At trial, Werner argued that: (1) plaintiff had sued the wrong party because DMI, not Werner, had withheld plaintiff's bond and wages; (2) even if Werner were the proper defendant, Nebraska law, not Oregon law, governed the parties' employment relationship;[2] and, (3) even under Oregon law, the withholdings were permissible.

The trial court ruled for plaintiff on the first two issues. The court first held that Werner was plaintiff's employer and, therefore, was the proper defendant. Specifically, the court found that Werner had supervised and controlled plaintiff's driving, that Werner had issued plaintiff probation reports, that plaintiff had driven a Werner truck and had worn a Werner uniform, and that DMI had had no actual control over plaintiff. Second, the court concluded that Oregon law governed the parties' employment relationship.

As to the third issue, the trial court held that the withholdings did not violate Oregon law and ruled in defendant's favor on that basis. In ruling against plaintiff on his claim based on ORS 652.150, the court reasoned that Werner did not withhold plaintiff's final paycheck for an unreasonable amount of time and that plaintiff had agreed to that withholding. The trial court also held that Werner did not violate ORS 652.610 by withholding the $400 "bond," because the bond was for plaintiff's benefit, the money ultimately did not go to the employer, and plaintiff had agreed to the withholding. As noted, the Court of Appeals affirmed without opinion.

We turn to the relevant statutes. ORS 652.150 provides, in part:

---

[1] Plaintiff also moved to amend his complaint to add DMI as a defendant. The trial court denied the latter motion, and plaintiff did not assign the denial as error on appeal.

[2] Werner does not contest personal jurisdiction in Oregon.

"If an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 * * * then, as a penalty for such nonpayment, the wages or compensation of such employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days from the due date[.]"

ORS 652.140(2) provides, in part:

"When an employee who does not have a contract for a definite period quits employment, all wages earned and unpaid at the time of quitting become due and payable immediately if the employee has given to the employer not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of intention to quit employment. * * *."

ORS 652.610(3) provides, in part:

"No employer may withhold, deduct or divert any portion of an employee's wages unless:

"(a)   The employer is required to do so by law;

"(b)   The deductions are authorized in writing by the employee, are for the employee's benefit, and are recorded in the employer's books;

"(c)   The employee has voluntarily signed an authorization for a deduction for any other item, provided that the ultimate recipient of the money withheld is not the employer, and that such deduction is recorded in the employer's books[.]"

Finally, ORS 652.360 provides, in part:

"No employer may by special contract or any other means exempt the employer from any provision of or liability or penalty imposed by ORS 652.310 to 652.414 or by any statute relating to the payment of wages, except insofar as the Commissioner of the Bureau of Labor and Industries in writing approves a special contract or other arrangement between an employer and one or more of such employer's employees. * * *."

■       Although Werner attempts to characterize the issues in this case in a variety of ways, the critical and ultimately determinative issue is whether Werner was plaintiff's employer under Oregon law. As to that issue, we look to ORS chapter 652. Unless Werner was plaintiff's employer under ORS 652.150 and ORS 652.610, Werner could not be liable for failure timely to pay wages or for wrongfully withholding wages in the manner alleged in plaintiff's complaint. Our analysis of plaintiff's claims under both of those statutes is parallel, and we address the statutes—and defendant's alleged failure to comply with them—together.

■       Whether Werner was plaintiff's employer under ORS 652.150 and ORS 652.610 are questions of statutory construction. Accordingly, we employ the interpretive methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). In interpreting statutes, our task is to determine the intent of the legislature. *Id.* at 610. The starting point in that determination is an examination of the text and context of the statute. *Id.* at 610-11. Words of common usage typically should be given their plain, natural, and ordinary meaning. *Id.* at 611.

        ORS 652.310(1) provides the following definition of "employer":

> "As used in ORS 652.310 to 652.414, unless the context requires otherwise:
>
> "(1)   'Employer' means any person who in this state, *directly or through an agent*, engages personal services of one or more employees * * *."

(Emphasis added.) ORS 652.360, to which the definition of "employer" in ORS 652.310(1) applies explicitly, itself applies to "any statute relating to the payment of wages." The statutes on which plaintiff bases his claims, ORS 652.150 and ORS 652.610, prohibit, respectively, untimely payment of wages and certain withholdings of wages—subjects that directly relate to the "payment of wages." Thus, the definition of employer in ORS 652.310(1) also applies to ORS 652.150 and ORS 652.610, and controls our understanding of the scope of the term "employer" and our analysis of Werner's obligations.

■ The term "agent" in ORS 652.310(1) carries an ordinary legal meaning. *See McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996) ("Analysis of text also includes reference to well-established legal meanings for terms that the legislature has used."). Generally, an agent is one who has authority to act for another in contractual dealings with third persons. *Barnes v. Eastern & Western Lbr. Co.*, 205 Or 553, 574, 287 P2d 929 (1955). Actual authority to act for another may be either express or implied. *Wiggins v. Barrett & Associates, Inc.*, 295 Or 679, 686, 669 P2d 1132 (1983). A principal is bound by the act of its agent if the agent acts within the scope of the agent's authority. *County of Lincoln v. Fischer et al*, 216 Or 421, 452, 339 P2d 1084 (1959).

In this case, the trial court found and the evidence indicates that Werner created DMI as a separate but wholly owned subsidiary corporation for payroll purposes. The trial court also found that plaintiff drove a Werner truck and that plaintiff served exclusively under the operational direction and control of Werner, not DMI. Further, the trial court found that Werner, not DMI, hired and disciplined plaintiff. DMI and plaintiff entered into an employment contract that ultimately was intended to provide plaintiff's driving services to Werner. On these facts, we conclude that DMI was Werner's agent and that Werner was an employer of plaintiff within the meaning of ORS 652.150 and ORS 652.610(3).

■ Werner further argues that, because DMI is a separate corporation and because plaintiff signed a form including the statement, "Prospective employee hereby acknowledges that if hired he or she will be an employee of DRIVER MANAGEMENT, INCORPORATED, a Nebraska corporation," that only DMI, not Werner, can be considered plaintiff's employer. ORS 652.360, however, provides, in part:

> "No employer may by special contract or any other means exempt the employer from any provision of or liability or penalty imposed by ORS 652.310 to 652.414 *or by any statute relating to the payment of wages* * * *."

(Emphasis added.) Werner claims that ORS 652.360 does not apply to ORS 652.150 or ORS 652.610, because those statutes are not named in ORS 652.360. In so arguing, Werner ignores the emphasized wording, which encompasses the statutes on

which plaintiff bases his claims. As explained above, ORS 652.150 and ORS 652.610 relate to the payment of wages. Therefore, under ORS 652.360, the agreements signed by plaintiff cannot exempt Werner from liability or any penalty imposed by Werner's violations of ORS 652.150 and ORS 652.610.[3]

■    We turn to whether Werner violated ORS 652.150, which prohibits employers from willfully failing to pay wages owed under, among other statutes, ORS 652.140. ORS 652.140(2) provides that wages are due immediately to an employee who quits if the employee gives at least 48 hours' notice. In this case, plaintiff gave one month's notice before quitting his employment, entitling him to be paid immediately.

This court on several occasions has addressed the meaning of "willfully fail to pay." In *State ex rel Nilsen v. Johnston*, 233 Or 103, 108, 377 P2d 331 (1962), the court provided the following definition of the term "wilful" in ORS 652.150:

> " "* * * the word "wilful" * * * does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that *the thing done or omitted to be done was done or omitted intentionally*. It amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent.'
>
> "That definition excludes the individual who does not know that his employee has left his employ or who has made an unintentional miscalculation."

(quoting *Davis v. Morris*, 37 Cal App 2d 269, 274, 99 P2d 345, 348 (1940)) (emphasis added).[4] In keeping with that definition, the court concluded that employers willfully fail to pay their employees when they "fail to compensate their employees although they are fully aware of their obligation to do so." *Nilsen*, 233 Or at 108.

---

[3] Werner does not argue that the Commissioner of the Bureau of Labor and Industries approved the agreements at issue in this case.

[4] Although ORS 652.150 has undergone minor amendments in the interval between the cases cited herein and this case, including the change in spelling of the word "willfully," the relevant statutory text has remained unchanged.

The question, then, is whether Werner, as the employer, had, or can be imputed to have had, a level of awareness of its obligation to pay plaintiff such that its failure to pay was "willful." We hold that it can. The fact that Werner chose to use the services of an agent, DMI, in arranging its employment of plaintiff and other drivers does not relieve or otherwise insulate Werner from its duties and responsibilities under ORS 652.150, nor does it lead to any reasonable inference that, by assigning those tasks to another entity, Werner somehow absolved itself of the knowledge that it would be liable for payment of services that it received from plaintiff. In that sense, Werner knew what its agent, DMI, knew. DMI issued a final wage statement in the amount of $0. That fact shows that there was neither a mistake nor a calculation error, but rather an intention not to pay wages when due. DMI's—and, therefore, Werner's—failure to pay or to arrange for proper payment of wages was willful.

Finally, we turn to whether Werner, as plaintiff's employer, withheld plaintiff's wages in violation of ORS 652.610. DMI withheld two separate amounts from plaintiff's final paycheck: $500.80 in regular wages and the $400 "bond."

The wording of ORS 652.610(3)(b) is unambiguous. An item must fall within its strictures to be deducted under it—that is, the employee's written authorization must be given, and the deduction must be recorded in the employer's books and must be for the ultimate benefit of the employee. ORS 652.610(3)(b). Potential liability of an employee to the employer is not a reason that supports a lawful deduction.

■ Similarly, ORS 652.610(3)(c) is unambiguous. To be a lawful deduction under that section, the employee must authorize it voluntarily, the ultimate recipient of the money cannot be the employer, and the deduction must be recorded in the employer's books. Werner argues that the withholding was lawful under ORS 652.610(3)(c) because the employer was not the "ultimate recipient" of the money. We reject that argument. If Werner needed the money to cover any liability that plaintiff owed it at the time of plaintiff's termination,

then Werner would have kept part of or all the wages withheld. The fortuity that the condition of the truck and equipment met Werner's approval—and, thus, that plaintiff eventually received the wages—does not make Werner's conduct lawful. Nothing in ORS 652.610 suggests that the legislature intended to permit employers to withhold, temporarily, wages that they cannot withhold permanently.

Finally, Werner contends that the amounts held as the personal bond were not "wages" under ORS 652.140(2): "[T]he fact that [p]laintiff paid for the bond from his wages does not make the bond itself 'wages.' " That assertion is not well taken. The money that Werner withheld did not lose its character as wages merely because it was held in a fund that Werner chose to call a "personal bond." To hold otherwise would allow employers to evade the wage claim laws by the simple expedient of calling wages by a different name. ORS 652.610 prohibited Werner from withholding plaintiff's wages in the first place. ORS 652.140(2) required Werner to pay those wages immediately when plaintiff ended his employment. The trial court erred in holding otherwise.

In sum, we hold that Werner was plaintiff's employer and, therefore, was subject to the requirements of ORS 652.150 and ORS 652.610. Werner improperly withheld $500.80 in wages and $400 as a "bond" from plaintiff's final paycheck, and the trial court erred in concluding that the withholding was for plaintiff's benefit. Accordingly, plaintiff is entitled to recover under ORS 652.150 and ORS 652.610(3)(c), together with penalties and attorney fees.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.