Argued and submitted September 5, 2002, affirmed February 5, 2003

In the Matter of the Compensation of
Mark Hopkins, Claimant.

Mark HOPKINS,
*Petitioner,*

*v.*

KOBOS CO.
and Liberty Northwest Insurance Corporation,
*Respondents.*

00-01117; A115168

62 P3d 870

Patrick K. Cougill argued the cause for petitioner. With him on the briefs was Welch, Bruun & Green.

David O. Wilson argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

■ ■  Claimant in this workers' compensation case received room and board from Victory Outreach Ministries (Victory), a charitable religious institution. Victory partly supported itself by providing labor—its residents—to businesses for special projects, in return for which the businesses made "donations" to the institution. Claimant injured himself while working on such a project and sought workers' compensation from the business, Kobos Co. He neither sought compensation from nor claimed to be employed by Victory, probably because a person whose work is "performing services primarily for board and lodging received from any religious, charitable or relief organization" is not covered by the workers' compensation statutes. ORS 656.027(11). The Workers' Compensation Board (board) concluded that claimant was not Kobos's "worker" and denied his claim. Because all of the facts underlying the board's conclusion were either stipulated or uncontroverted, only legal issues require our attention. We review them for errors of law, ORS 656.298(7); ORS 183.482(7), (8), and affirm.

The parties stipulated to the following facts:

"1.   Claimant was a resident of Victory Outreach Ministries (Victory) on December 29, 1999, the date of injury. Victory Outreach is a ministry that provides recovery homes and assistance to disadvantaged individuals (includes homeless, drug, alcohol and spiritual recovery). Victory is funded by charitable contributions and, in part, acquires work projects for which donations are received, and in turn those donations are used to run Victory Outreach. There is no legal agreement binding the residents to stay at a Victory Outreach home for any duration of time.

"2.   There is no dispute that an injury occurred at the Kobos Warehouse loading dock in Portland on December 29, 1999, and that that incident resulted in injury to claimant.

"3.   The sole dispute is whether claimant is a subject employee of Kobos.

"4. Claimant lived at a Victory Outreach facility/location at no cost to him. Victory provided meals and lodging to claimant while there.

"5. Kobos first became involved with Victory outreach when it donated coffee to Victory.

"6. Kobos and Victory had an arrangement that for a charitable donation, paid directly from Kobos to Victory, Victory would assign certain Victory residents to perform services for Kobos. On the date of injury, the services included providing manpower to Kobos to enable Kobos to close several stores. The donation was reported by Victory as a charitable donation.

"7. The donation made by Kobos to Victory for various services performed by Victory residents on December 27, 28 and 29th, 1999 was based upon either a flat rate per project, the number of people needed to accomplish the project and/or the number of boxes moved as a part of the project. On the date of injury, December 29, 1999, the donation directed to the project upon which claimant was involved was based solely on a flat rate of $750.00, associated with the moving out of the Eugene Kobos store. The charitable donation ($750) for this project was not based upon a calculation of manpower wages. The figure was determined solely upon what Kobos was willing to donate.

"8. None of the charitable donation made by Kobos to Victory went directly to claimant in any manner, for room, board or otherwise.

"9. Claimant received no remuneration from, nor did he expect to be paid by, Kobos for his services on December 27, 28 or 29th, 1999."

In addition, the board found, the record shows, and claimant does not deny, that "there is no evidence of an agreement (between claimant and Kobos or Victory) involving an exchange of services for remuneration."

■ To receive workers' compensation, a person must be a "worker" as that term is defined by ORS 656.005(30): "any person * * * who engages to furnish services for a remuneration, subject to the direction and control of an employer[.]" That definition contains two elements: an agreement between the claimant and the employer that the employer will provide remuneration for the claimant's services, and the

employer's right to direct and control the services the claimant provides. *Liberty Northwest Ins. Corp. v. Church*, 106 Or App 477, 481, 808 P2d 106, *rev den*, 312 Or 16 (1991). A claimant bears the burden of establishing the existence of the employment relationship. *Konell v. Konell*, 48 Or App 551, 557, 617 P2d 313 (1980), *rev den*, 290 Or 449 (1981).

In the present case, Stipulation 9, "[c]laimant received no remuneration from, nor did he expect to be paid by, Kobos," defeats any argument that claimant was a "worker" for Kobos. Claimant attempts to avoid the effect of that fact by raising what it characterizes as a theory based on agency:

> "[T]he payment which Kobos made to Victory is payment for a service which the residents provided for the benefit of Kobos. Victory received remuneration as a result of this arrangement and claimant, as an agent of Victory, is a beneficiary of said remuneration. Under the facts of this case, the remuneration received by Victory should be imputed to claimant."

That theory has several flaws. First, the record provides no evidence of an agency relationship between Victory and claimant. "Generally, an agent is one who has authority to act for another in contractual dealings with third persons. Actual authority to act for another may be either express or implied." *Taylor v. Werner Enterprises, Inc.*, 329 Or 461, 468, 988 P2d 384 (1999) (citations omitted). The agent's principal "must have the right [to] control" the acts that the agent performs. *Gaha v. Taylor-Johnson Dodge,* 53 Or App 471, 477, 632 P2d 483 (1981). Even if we could infer from the record an agreement between claimant and Victory conferring authority on claimant to act for Victory, we could by no means find any evidence that Victory controlled or had the right to control claimant's acts for Kobos on Victory's behalf.

Second, even if we could find that claimant was Victory's agent, that finding would not mean that payments to Victory could be imputed to claimant. The act of the agent binds the principal. For payment to Victory to constitute payment to claimant, Victory would have to be claimant's agent, that is, there would have to be an agreement between claimant and Victory that Victory, on behalf of claimant, would

receive the remuneration that Kobos owed to claimant. Claimant stipulated to the fact that he was not paid and did not expect to be paid by Kobos. Therefore, he could not have authorized Victory to receive payment from Kobos on his behalf.

In fact, claimant's theory does not fit the agency model. The gist of the theory—"under the facts of this case, the remuneration received by Victory should be imputed to claimant"—more appropriately fits within the law governing contractors and subcontractors. Seen in that perspective, claimant's argument would be that Victory acted more or less as a general contractor, agreeing with Kobos to undertake the moving project and subcontracting with claimant to do the actual work. However, reconfiguring claimant's theory in those terms does not help him. In *Martelli v. R.A. Chambers and Associates*, 99 Or App 524, 783 P2d 31 (1989), *aff'd*, 310 Or 529, 800 P2d 766 (1990), an employee of a construction subcontractor sued the general contractor for an on-the-job injury. The general contractor contended that it was immune because the plaintiff's exclusive remedy was workers' compensation. We held that the general contractor's payment to the subcontractor, and thence to the plaintiff, did not make the plaintiff the general contractor's "worker" under the predecessor statute to ORS 656.005(30):

> "Although the lack of a direct transfer of funds between the parties is not determinative, 'remuneration' contemplates a more direct *quid pro quo* between payment and services than the possibility that plaintiff's compensation as a worker will ultimately come from the contract payment to his employer."

*Martelli,* 99 Or App at 527.

Finally, claimant notes that the board made the following observation:

> "[W]e acknowledge that the Kobos/Victory charitable arrangement creates a loophole in the workers' compensation system. Victory provides lodging and assistance to disadvantaged people and then uses these same individuals to perform work for Kobos. In exchange for a 'donation,' Kobos receives labor. Victory profits * * * and Kobos profits * * *

[but] [i]ndividuals such as claimant * * * are the losers from this arrangement."

Claimant urges us to close this "loophole." We agree that the existing statutory scheme presents the potential for abuse, although we express no opinion as to whether abuse occurred in this case. Closing the "loophole," however, is a task for the legislature.

Affirmed.