EGAN, C.J.
*332 Claimant seeks review of an order of the Workers' Compensation Board affirming an order of an administrative law judge (ALJ) upholding SAIF's denial of claimant's claim for an injury she suffered while on her way to an "orientation" before beginning a paid training for work as a telemarketer at SAIF's insured, Jadent Incorporated. We conclude that the board's order is not supported by substantial evidence or substantial reason and that the board erred as a matter of law in upholding the denial. We therefore reverse the board and remand for an order determining that the claim is compensable.
We summarize the facts from the board's findings, which are largely undisputed. Claimant had previously worked as a telemarketer for Crystal Marketing Group (CMG). CMG was going to close its operations and, in November 2011, CMG's owner invited the management of one of its clients, Jadent, to come talk to CMG employees about the possibility of working in telemarketing for Jadent. McClintock, Jadent's Portland branch manager, spoke to a group of CMG employees and invited them to come see him in January 2012. A number of CMG
*29 employees, but not claimant, applied for work with Jadent and were hired in January 2012.
One year later, on January 2, 2013, claimant contacted McClintock, seeking employment. She met with him and completed an application for a telemarketing position, indicating that she had previously worked for Jadent. McClintock clarified with claimant that she had not worked for Jadent but had only worked for CMG, which had performed contract work for Jadent. Claimant also told McClintock that she believed McClintock had promised her a job with Jadent one year before when CMG closed its operations in December 2011; but McClintock explained that he had come to CMG at that time to encourage CMG employees to apply for positions with Jadent but had not promised to hire them.
When claimant later called to ask about the status of her application, McClintock invited her to return to the office on January 21, 2013, to attend an "orientation" and a *333 paid training. The orientation required the presentation of photo identification, the completion of personnel paperwork, and agreement with Jadent's "rules of the office," including its sexual harassment policy, productivity expectations, and dress code.
On the day of the orientation and training, claimant arrived at Jadent's office. As she opened a door to a stairwell leading to Jadent's offices, a Jadent employee came through the door, which flew open and struck claimant, knocking her to the floor. Medical imaging revealed a right hip fracture, for which claimant received medical treatment including surgery.
Claimant filed a claim for the injury with Jadent. SAIF denied the claim, asserting that claimant was not a subject worker at the time of her injury. At the hearing, claimant testified that she believed, when she arrived at Jadent's office on January 21, 2013, that on January 2, 2013, McClintock had promised her a paid training and employment with Jadent, and that the orientation was a mere formality. McClintock offered a different view, testifying that the orientation was a prerequisite to participating in Jadent's paid training and involved the completion of forms necessary for employment, as well as the signing of documents agreeing to comply with workplace policies, including productivity expectations and employer's dress code. McClintock testified that the orientation was required for all prospective employees before they were eligible to begin the paid training, and that, sometimes, prospective employees did not complete the orientation and were not offered the paid training. At the time of her injury, SAIF asserted, claimant had not begun the orientation and had not been hired by Jadent for the paid training.
The board upheld SAIF's denial. In affirming the ALJ's order, the board noted claimant's understanding that she would participate in the first day of paid training at nine dollars per hour; but the board explicitly rejected claimant's contention that she had been offered employment with remuneration, finding McClintock's testimony more persuasive that claimant could not participate in the paid training until she had completed the orientation. The board implicitly *334 agreed with the ALJ's finding that claimant's testimony was "unreliable," based on claimant's mistaken understanding that she had previously worked for Jadent and that McClintock had previously offered her a job at Jadent. The board expressly found that claimant's employment at Jadent was contingent on the completion of the orientation paperwork and that she had never been hired by Jadent, because she did not complete the orientation. One board member dissented, reasoning that, at the time of claimant's injury, claimant, and Jadent had an implied agreement that claimant would engage in the paid training.[1]
We review the board's findings for substantial evidence, its order for substantial reason, and its legal conclusions for errors of law. ORS 656.298(7) ; ORS 183.482. Only "subject workers" are entitled to coverage *30 under the Workers' Compensation Law. ORS 656.027. One who is not a "worker" cannot be a subject worker. On judicial review, in support of her contention that the claim is compensable, claimant contends that she is entitled to workers' compensation coverage because she falls within the statutory definition of a "worker." ORS 656.005(30) provides:
" 'Worker' means any person * * * who engages to furnish services for a remuneration, subject to the direction and control of an employer[.]"
Claimant has the burden to prove that she was a "worker" within the meaning of ORS 656.005(30). Hopkins v. Kobos Co. , 186 Or.App. 273, 276-77, 62 P.3d 870 (2003). As we said in Hopkins , the definition of "worker"
"contains two elements: an agreement between the claimant and the employer that the employer will provide remuneration for the claimant's services, and the employer's right to direct and control the services the claimant provides."
Id. at 276-77, 62 P.3d 870. Claimant asserts that, despite McClintock's testimony that claimant had not yet been hired as an *335 employee, the evidence in the record requires the finding that she was a "worker," at least to provide temporary services for remuneration (the paid training), and had accepted the offer to work by showing up for the orientation and training at the required day and time. Like the dissenting board member, claimant asserts that the required "orientation" simply involved the completion of personnel forms. She asserts that, "[g]iven that almost all employers have workers do this on the first day of work," the orientation was not a condition of employment but was a mere formality.
SAIF responds that the case involves a simple review for substantial evidence. SAIF points out that McClintock testified that claimant had misunderstood that she had previously worked for Jadent or had been offered employment. McClintock testified that the orientation was a prerequisite to employment, that it is not Jadent's policy to offer employment to someone before they have completed the orientation, and that he had not offered claimant employment. SAIF contends there is substantial evidence, in the form of McClintock's testimony, to support the board's findings that claimant was not reliable, that McClintock had not made an unconditional offer of employment, and that completion of the orientation was a prerequisite to participation in the paid training, and that those findings support the board's conclusion that, at the time of her injury, claimant was not a "worker" within the meaning of ORS 656.005(30), because she had not been engaged to furnish services for remuneration.
However, this case is not about credibility or reliability. Claimant's misapprehension about her previous employment or her misunderstanding about McClintock's intention to offer employment are irrelevant to the issue here-the reason claimant came to Jadent on the day of the injury. Claimant's misapprehension as to whether she had previously worked for Jadent or had previously been offered a job by McClintock do not make her unreliable as to that issue. Claimant testified that she came to Jadent's offices on the day of the injury to complete paperwork and to participate in the paid training. Not a single witness contradicted that evidence.
*336 The board expressly found that claimant's employment for purposes of the paid training was contingent on completion of the orientation paperwork, including agreeing to the rules of the office, and, for that reason, claimant was not a worker at the time of the injury. SAIF contends that that finding is supported by substantial evidence in the form of McClintock's testimony that claimant had not yet been hired, that people who had completed a written application often failed to show up for the orientation and training, and that a few candidates have even been screened out during the orientation.
Although the board's finding is consistent with Jadent's view of when a person technically becomes Jadent's employee, it cannot be squared with the undisputed evidence that claimant was invited to come to Jadent's office for the orientation and training and came to Jadent's offices on the day of the injury ready, willing, and able to show her identification, sign paperwork, and begin the *31 paid training. Indeed, the board's conclusion that claimant was not a worker appears to be inconsistent even with the board's own findings. The ALJ found:
"[McClintock] told claimant to come back to the office on Monday, January 21, 2013, at shortly before 4 p.m. to go through an orientation which included completing paperwork, and then begin training. He told her that the training takes three days, from Monday through Wednesday, and that she would be paid $9 an hour during the training. He indicated that, if she was hired, she would be working from 4 p.m. to 9 p.m., five days per week."
The board's own order stated these findings:
"[Claimant] completed a written application and an interview. * * * She called to inquire about her application and was then invited to attend an 'orientation and paid training' to take place on January 21, 2013."
Those findings require the conclusion that claimant had been invited to attend the orientation and the paid training and that, but for her injury, claimant would have completed the orientation and begun the training. Even McClintock testified that, "more than likely," most people who come for the orientation are offered a job, and "I wouldn't expect there *337 would have been a problem with [claimant] being hired." In light of the evidence in the record and the board's findings, we conclude that the board's conclusion that claimant was not a "worker" at the time of her injury within the meaning of ORS 656.005(30) is not supported by substantial evidence or substantial reason.
Reversed and remanded.

The dissenting board member found that the orientation, which did not involve an assessment of the applicant's qualifications, was not a part of the application process. Rather, the dissenting board member reasoned, the orientation was simply the first requirement for a new employee, and an implied contract of employment in the form of the paid training had come into existence before the orientation.